Ronald Karz
State Bar #134764
MUELLER LAW, PLLC
404 W. 7th Street
Austin, Texas 78701
(512) 478-1236
ronald.karz@muellerlaw.com

Attorney for Plaintiffs

**FILED**

JAN 0 8 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ Cw _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

19 CV 0 043 W BLM

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA, <br><br> *ex rel.* [under seal] <br><br> Plaintiffs, <br><br> v. <br><br> [under seal], <br><br> Defendants. | Civ. Action No. _____ <br><br> *QUI TAM* COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)2 <br><br> **DEMAND FOR JURY TRIAL** |

**ORIGINAL**

- 1 -

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
and the STATE OF CALIFORNIA

*ex rel.* DIANA MASON

Plaintiffs,

v.

PRISM AUTISM FOUNDATION
d/b/a PRISM BEHAVIORAL
SOLUTIONS

Defendants.

Civ. Action No. _____

*QUI TAM* COMPLAINT
FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)2
DEMAND FOR JURY TRIAL

## COMPLAINT

On behalf of the United States of America and the State of California Relator Diana Mason ("Relator") brings this *qui tam* Complaint against Defendant PRISM AUTISM FOUNDATION d/b/a PRISM BEHAVIORAL SOLUTIONS (hereinafter "Defendant") and alleges as follows:

### INTRODUCTION

1.  This is an action to recover treble damages and civil penalties on behalf of the United States of America and the State of California (collectively: the "Government") arising from an unlawful scheme by Defendant PRISM AUTISM FOUNDATION d/b/a PRISM BEHAVIORAL SOLUTIONS ("Prism") to

manipulate Medicaid and other Government-funded health insurance programs for false and fraudulent claims made or caused to be made through the payment of false claims for therapy, counseling and educational services provided to families affected by Autism in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended (the "FCA"), the California State False Claims Act, Cal. Gov't. Code 12650-12655. ("CAFCA") and the California Insurance Fraud Prevention Act, California Insurance Code §1871.7. ("IFPA").

2.    According to its website, Prism serves families with children or young adults on the Autism spectrum.

3.    Prism routinely (i) bills for services not rendered, (ii) overbills for services rendered by overstating the length of the therapy sessions, and (iii) bills for therapy services rendered without the adequate supervision of a licensed Board Certified Behavioral Analyst ("BCBA").

4.    Defendant's improper conduct was calculated to increase its profits at the expense of the taxpayer.

5.    The False Claims alleged herein were presented, made or used to defraud Government-funded health benefit programs, including, but not limited to, Medicaid.  Defendant caused the False Claims alleged herein to be presented, made or used through its improper practices which include the submission of billing claims to the Government with knowingly false information. As set forth in greater detail

below, Defendant's ongoing improper conduct has caused and continues to cause the United States to incur millions of dollars in damages.

## PARTIES

6. Relator Diana Mason is a citizen of the United States and a resident of the State of California.

7. She has been a licensed BCBA since August 2016.

8. Defendant employed Relator from March 2018 to June 2018.

9. While in the Defendant's employ, Relator worked directly with families to develop and implement appropriate behavioral interventions for children and young adults.

10. As a BCBA, Relator was also responsible for supervising therapy assistants as they provided billable services to the patients and their families.

11. Defendant PRISM AUTISM FOUNDATION is a California 501(c)(3) nonprofit corporation currently doing business in California as PRISM BEHAVIORAL SOLUTIONS.

12. According to public records accessed through the California Secretary of State website, Defendant filed its original incorporation documents in September 2014 under the name 'PRISM BEHAVIORAL SOLUTIONS, INC.'

13. In July 2015, the company's name was changed via a field certificate of amendment to 'PRISM AUTISM FOUNDATION.'

14. According to its most recent Statement of Information filed with the California Secretary of State, the Defendant's principal office is located at 23928 Jensen Dr., West Hills, California 91304.

15. According to its website, Defendant's headquarters are located at 21600 Oxnard St. Suite 1030, Woodland Hills, California 91367.

## JURISDICTION AND VENUE

16. Venue and jurisdiction are the same under the FCA. 31 U.S.C. § 3732. A plaintiff may bring an action in any judicial district in which any Defendant may be found or in which any proscribed act occurred. 31 U.S.C. § 3732(a). The United States District Court for the Southern District of California has jurisdiction and venue for any Complaint brought in the matter because Defendant is located in this district and many of the proscribed acts occurred in this district.

17. Relator is not aware of if allegations in this Complaint may have been publicly disclosed. Further, to the extent that any of the information in this Complaint may have been publicly disclosed, Relator's allegations in this Complaint are not based on such public disclosures.

18. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in their possession contemporaneous with the filing of the Complaint. Relator complied with this provision by serving her pre-suit

Disclosure Statement with attached exhibits upon Joseph Price, Esq. Assistant United States Attorney for the Southern District of California on December 27, 2018.

19.    In compliance with 31 U.S.C. §3730(b)(2), relator shall, contemporaneously with the filing of this Complaint, serve copies of this Complaint upon the United States Attorney for the Southern District of California and upon the Attorney General of the United States.

20.    In further compliance with 31 U.S.C. § 3730(b)(2), this Complaint is filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

## MEDICAL BACKGROUND

21.    Autism Spectrum Disorder ("ASD") is a developmental disability that can cause significant social, communication and behavioral challenges.

22.    A diagnosis of ASD includes several conditions that used to be diagnosed separately: autistic disorder, pervasive developmental disorder not otherwise specified (PDD-NOS), and Asperger syndrome.

23.    These conditions are now all called Autism Spectrum Disorder.

24.    Currently, the Center for Disease Control and Prevention ("CDC") estimates that approximately 1 in 68 children has been identified with ASD.

25.    Treatments for children with ASD can improve physical and mental development.

26. Generally, these treatments can be categorized in four categories: 1) behavioral and communication approaches; 2) dietary approaches; 3) medications; and 4) complementary and alternative medicine.

27. Currently, much of the national discussion focuses on one particular treatment modality called Applied Behavioral Analysis ("ABA").

28. ABA is therapy based on the science of learning and behavior; it aims to apply understanding of how behavior works to real situations and ultimately decrease behaviors that are harmful or affect learning.

29. ABA therapy programs can help increase language and communication skills, improve attention, focus, social skills, memory, academics and decrease problem behaviors.

30. ABA utilizes many techniques for understanding and changing behavior such as Positive Reinforcement. Good ABA programs are not "one size fits all" but are instead carefully tailored to the needs of each individual by a BCBA.

31. Such individually tailored programs are designed by the BCBA following an initial assessment and then implemented in subsequent regular sessions by either the BCBA or by a therapy assistant working under the supervision of a BCBA.

# LEGAL FRAMEWORK

**A.    Medicaid Coverage of Applied Behavioral Analysis Services For Autism Spectrum Disorder**

32.    Medicaid is a state and federal assistance program to provide payment of medical expenses for low-income patients.  Medicaid was created in 1965 in Title XIX of the Social Security Act.

33.    Funding for Medicaid is shared between the federal government and state programs that choose to participate in Medicaid.

34.    The federal Medicaid program reimburses providers for services to address ASD through a variety of authorities. Services are reimbursed through § 1905(a) of the Social Security Act (the Act), § 1915(i) state plan Home and Community-Based Services, § 1915(c) Home and Community-Based Services ("HCBS") waiver programs and § 1115 research and demonstration programs.

35.    Medicaid state plans may cover services to address ASD under several different § 1905(a) benefit categories, including § 1905(a)(6) - services of other licensed practitioners; § 1905(a)(13)(c) - preventive services; and § 1905(a)(10) - therapy services.

36.    Medi-Cal, the California state Medicaid program specifically covers ABA services to address ASD including a "Behavioral-Analytic Assessment and development of a behavioral treatment plan" designed by a "qualified autism service

provider" and subsequent behavioral health treatment interventions provided under the supervision of the qualified autism service provider."

**B.    The False Claims Acts**

37.    Originally enacted in 1863, Congress substantially amended the FCA in 1986. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

38.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(A), (B).

39.    Any person found to have violated these provisions is liable for a civil penalty for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

40.     Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. 3729(b)(1).

41.     The FCA also broadly defines a "claim" as one that includes

(A)     ...any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that —

(i)     is presented to an officer, employee, or agent of the United States; or

(ii)    is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government —

(I)     provides or has provided any portion of the money or property requested or demanded; or

(II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(b)(2)(A).

42.     The *qui tam* provision of the FCA empowers private persons with information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in the proceeds of any recovery.

43.     The complaint must be filed under seal without service on any Defendant.

44. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

45. California enacted its own civil False Claims Act in 1987 to establish a cause of action for false claims for payment submitted to the state of California.

46. Like its federal counterpart, the CAFCA includes a *qui tam* provision that allows private persons to bring an action on behalf of the Government and to share in the proceeds of any recovery.

**C.    Overview of the California Insurance Fraud Prevention Act**

47. Insurance fraud imposes significant costs on the public and insurers, even if an insurer ultimately discovers the fraud and denies the fraudulent claim.

48. Most states limit a defrauded insurer's remedies to breach of contract and fraud actions, which typically allow an insurer to recover its damages and rescind the policy, however, California provides another option.

49. The California Insurance Fraud Prevention Act ("IFPA"), California Insurance Code §1871.7, is a powerful tool designed to prevent and punish insurance fraud through the imposition of significant penalties.

50. California enacted the IFPA in 1989 after finding that rampant insurance fraud contributed substantially to rising premium costs, and the Government needed assistance to prosecute the fraud.

51.    Unlike most state insurance fraud statutes — which authorize only the government to prosecute insurance fraud — the IFPA authorizes "interested persons, including an insurer, [to] bring a civil action for [insurance fraud] for the person and for the State of California." Cal. Ins. Code § 1871.7(e)(1).

52.    The action must be brought in the name of the state and filed under seal to provide the Government the opportunity to investigate and determine whether to intervene.

53.    Generally, if the Government does not intervene, the court unseals the complaint and the person who brought the action — often referred to as the relator — proceeds with the action.

54.    If the Government intervenes, the relator remains involved, but the Government has the primary responsibility for prosecuting the action.

55.    To achieve its objectives, the IFPA imposes significant monetary penalties on persons who violate the IFPA or Penal Code §§549-551 by, among other things, submitting fraudulent insurance claims. The IFPA prescribes penalties between $5,000 and $10,000 plus an assessment of not more than three times the amount of the claim. Cal. Ins. Code § 1871.7(b).

56.    The prescribed penalty is assessed for each fraudulent claim submitted to an insurer.

57.     Significantly, because the violation occurs upon completion of the proscribed act, the IFPA does not require proof that the insurer paid the fraudulent claim to justify the assessment of penalties. It only requires proof that the unlawful act led to the fraudulent claim.

58.     The IFPA does not define the term "fraudulent claim," a California Appellate Court recently held that the "'fraudulent claim' requirement broadly refers to claims that are in some manner deceitful, and is not limited to claims that contain an express misstatement of fact."

59.     A "fraudulent claim" is one that is "characterized in any way by deceit" or "that result[s] from conduct that is done with an intention to gain unfair or dishonest advantage."

60.     In other words, what starts off as a legitimate claim may become fraudulent if the insured inflates the claim, conceals material facts about it or misrepresents any portion of it, to gain an unfair or dishonest advantage, such as a *greater payout*.

## DEFENDANT'S IMPROPER CONDUCT

61.     Prism routinely (i) bills for services not rendered, (ii) overbills for services rendered by overstating the length of the therapy sessions and (iii) engages in other billing improprieties such as billing for services rendered without the supervision of a BCBA.

62.    Five representative examples of Defendant's wrongful conduct are detailed with particularity below. These examples are not exhaustive of Defendant's wrongful conduct and Relator became personally aware of at least sixty additional similar examples during her tenure with Defendant.

**Patient #1[1]**

63.    Defendant billed Patient #1 for a therapy session with the patient's caregiver on March 20, 2018.

64.    Defendant further billed Patient #1 for supervision of the aforementioned session by Dr. Lusine Gabrielyan.

65.    However, as Defendant's documents show, no session with the patient's caregiver took place on March 20, 2018 because the caregiver was unavailable.

66.    Defendant billed for services not rendered.

67.    Further, Defendant billed the patient for a direct therapy session on April 12, 2018.

68.    According to Defendant's documents, the session was provided by therapist A. Jones between 2:00 PM and 6:00 PM. However, Defendant's documents also state that the session was supervised by Dr. Lusine Gabrielyan from 9:00 AM to 12:00 PM.

---

[1] Patients' personal information referenced in this Complaint is omitted to comply with the Health Insurance Portability and Accountability Act ("HIPAA").

69.     Though she is the founder and president of Prism, Dr. Gabrielyan is not a BCBA and thus is not a "qualified autism service provider" who can to supervise ABA services pursuant to Medicaid rules.

70.     Hence, either Dr. Gabrielyan did not supervise the direct therapy session billed to Patient #1 on April 12, 2018 and thus billed for services not rendered or this is an example of the Defendant billing for therapy services rendered without the adequate supervision of a BCBA. Either is a violation of the FCA.

**Patient # 2**

71.   · Defendant billed Patient #2 for a direct therapy session on March 19, 2018.

72.     Defendant's internal billing records indicate that the session was led by a therapist with initials 'A.M.' and was supervised by Dr. Lusine Gabrielyan.

73.     However, Dr. Gabrielyan is not a BCBA and is thus not qualified to supervise such sessions.

74.     Hence this is an example of the Defendant billing for therapy services rendered without the adequate supervision of a BCBA.

**Patient #3**

75.     Defendant billed Patient #3 for a direct therapy session on March 28, 2018.

76.     Defendant's internal billing records indicate that the session was supervised by Dr. Kimberly Sptiz Mares.

77.     Dr. Mares is a licensed psychologist, but is not a BCBA and thus is unqualified to supervise such sessions.

78.     Defendant billed for therapy services rendered without the adequate supervision of a BCBA

**Patient #4**

79.     Defendant billed Patient #4 for a therapy session with the patient's caregiver on either April 11th or 12th of 2018.

80.     Defendant's internal documents indicate that the parent trainer, "I. Borrero," conducted a "phone check-in" with the client's mother. The notes do not indicate how long the "check-in" was and there is no billing entry for a parent training session for this client on that date.

81.     However, Defendant's internal billing records indicate that Dr. Kimberly Spitz Mares supervised a 3-hour therapy session on that day for this client. The billing sheet also indicates that Defendant billed for a 3-hour session provided by I. Borrero on April 11, 2018.

82.     Hence, Defendant either improperly overbilled as a three-hour supervised session with the caregiver on April 12, 2018 for what was *a mere* "phone check-in" with the caregiver yielding no more than six short lines of handwritten notes or Defendant billed for a therapy session with the patient on April 11, 2018 that was

improperly supervised as Dr. Mares is not a BCBA and is unqualified to supervise such sessions on her own.

**Patient #5**

83.    Defendant billed Patient #5 for a therapy session with the patient's caregiver March 22, 2018.

84.    Defendant's internal documents indicate that "mom and client were sick" and that therapy sessions were thus cancelled for March 22, 2018.

85.    However, the Defendants billing records indicate that Dr. Kimberly Spitz Mares supposedly supervised a three-hour session with the patient and the caregiver from 10 a.m. to 1 p.m.

86.    Billing records also indicate that the patient's payor was billed for a three-hour direct therapy session from 4 p.m. to 7 p.m. and a three-hour parent training session the previous day before on March 21, 2018.

87.    Defendant improperly overbilled for a three-hour supervised session when the sessions were cancelled due to illness.

88.    Further, as previously noted, Dr. Mares is not a BCBA and is thus unqualified to supervise such sessions on her own.

89.    The non-exhaustive list of examples reviewed above illustrate improper conduct by the Defendant including: (i) billing for more therapy minutes than were actually provided, (ii) billing for therapy sessions that did not take place, and (iii)

billing for therapy sessions under the supervision of individuals who are not BCBAs and are unqualified to supervise these sessions on their own.

### DEFENDANT'S IMPROPER CONDUCT CAUSED SUBSTANTIAL DAMAGE TO THE GOVERNMENT

90. PRISM violated the FCA, the CAFCA and the IFPA by routinely billing for services not rendered, overbilling for services rendered, and improperly billing for services that were not covered because they were not adequately supervised. The practice was known and condoned at the highest levels of the company such as Dr. Lusine Gabrielyan herself. PRISM ignored patients' true needs through this scheme and damaged the Government significantly by causing millions of dollars in false or fraudulent claims for reimbursement.

### CONCLUSION

91. Defendant caused the United States, the State of California and California private insurers to incur substantial damages by presenting, making, using or causing to be presented, made or used thousands of False Claims to Government-funded health programs and private insurers in connection with its fraudulent schemes.

92. The False Claims resulted in remuneration unlawfully received by the Defendant.

93. More specifically, Defendant violated numerous provisions of the FCA, including, but not limited to, the following: 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(a)(1)(B); 31 U.S.C. § 3729(a)(1)(C); 31 U.S.C. § 3729(a)(1)(D); 31 U.S.C. §

3729(a)(1)(G), Cal. Gov't. Code 12650-12655 and the California Insurance Code §1871.7.

94.     In light of the foregoing, Defendant is liable to the United States and the State of California for civil penalties and treble damages.

95.     The estimated damages to the United States and the State of California caused by the False Claims alleged herein are significant.

**CLAIMS FOR RELIEF**
**COUNT I**
**False Claims Act: Presentation of False Claims**
**31 U.S.C. § 3729(a)(1)(A)**

96.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

97.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein– *i.e.*, the false certifications and representations made or caused to be made by the Defendant— Defendant has "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).

98.     As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for

violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT II
### False Claims Act: Making or Using a False Record or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

99.  Relator repeats and incorporates by reference the allegations above as if fully contained herein.

100.  As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein- – *i.e.*, the false certifications and representations made or caused to be made by the Defendant—the Defendant has "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(2).

101.  As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. §

3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT III
### False Claims Act: Conspiracy to Commit a Violation
### 31 U.S.C. § 3729(a)(1)(C)

102. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

103. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant and its agents have "conspire[d] to commit a violation of subparagraph (A), (B), (D)…or (G)" in violation of 31 U.S.C. §3729(a)(1)(C).

104. As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT IV
### False Claims Act: Knowingly Delivers Less Than All of
### Government's Property in Defendant's Possession
### 31 U.S.C. §3729(a)(1)(D)

105. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

106. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant "ha[d] possession, custody, or control of property or money used, or to be used, by the Government and knowingly deliver[ed], or cause[d] to be delivered, less than all of that money or property" in violation of 31 U.S.C. §3729(a)(1)(D).

107. As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

# COUNT V
## False Claims Act:
## Knowingly Conceals or Improperly Avoids an Obligation to Pay Money to the Government
## 31 U.S.C. §3729(a)(1)(G)

108.   Relator repeats and incorporates by reference the allegations above as if fully contained herein.

109.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases and obligation to pay or transit money or property to the Government: in violation of 31 U.S.C. §3729(a)(1)(G).

110.   As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT VI
### California False Claims and Reporting Act
### Cal. Gov't Code §§ 12651(a)(1), (2), (3) and (7)

111. Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

112. This is a claim for treble damages and penalties under the CA FCA.

113. Through the acts more particularly set forth in the foregoing paragraphs, Defendants knowingly presented or caused to be presented false or fraudulent claims to the California State Government for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

114. Through the acts more particularly set forth in the foregoing paragraphs, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government to approve and pay false and fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(2).

115. Through the acts more particularly set forth in the foregoing paragraphs, Defendants conspired to defraud the California State Government by inducing it to approve and pay false and fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(3).

116. Through the acts more particularly set forth in the foregoing paragraphs, Defendants knowingly made, used or caused to be made or used false records or

statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the California State Government, in violation of Cal. Gov't Code § 12651(a)(7).

117. The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, has paid and continues to pay claims that would not be paid but for Defendants' illegal and hidden marketing and kickback scheme.

118. As a result of Defendants' conduct, the State of California has been damaged, and continues to be damaged, in an amount to be determined at trial.

119. The State of California is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**COUNT VII**
**California Insurance Fraud Prevention Act**
**California Insurance Code §1871.7**

120. Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

121. Through the acts more particularly set forth in the foregoing paragraphs, Defendants knowingly employed marketeers, runners, steerers, or other persons to procure clients or patients to whom Defendants could then provide services or benefits under a contract of insurance or that was the basis for a claim against an

insured individual or his or her insurer.

122. As a result of Defendants' conduct, the United States has been damaged, and continues to be damaged, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United States, demands judgment against Defendants, ordering that:

a. Defendants pay an amount equal to three times the amount of damages that the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of 31 U.S.C. § 3729 et seq.;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730 and/or any other applicable provision of law;

d. Defendants pay a civil fine of $25,000, or such other penalty as the law may permit and/or require, for each violation of the Anti-Kickback Statute; and

e. Relator be awarded such other and further relief as this Court may deem

just and proper.

WHEREFORE, Relator, on behalf of the State of California, demand judgment against Defendants, ordering that:

a. Defendants pay an amount equal to three times the amount of damages that the State of California has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the CA FCA;

b. Relator be awarded the maximum amount allowed pursuant to the CA FCA and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the CA FCA and/or any other applicable provision of law;

d. Relator be awarded such other and further relief as this Court may deem just and proper.

WHEREFORE, Relator, on behalf of the State of California, demand judgment against Defendants, ordering that:

a. Defendants pay an amount not less than five thousand dollars ($5,000) plus an assessment of three times the amount of each fraudulent claim presented to an insurance company in violation of the IFPA.

b. Relator be awarded the maximum amount allowed pursuant to the IFPA

and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the IFPA and/or any other applicable provision of law;

123. Relator be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby demands trial by jury.

January 4, 2019

Ronald Karz
Christopher P. Furlong
William L. Hurlock
MUELLER LAW, PLLC
404 W. 7th Street
Austin, Texas 78701
(512) 478-1236
christopher.furlong@muellerlaw.com
ronald.karz@muellerlaw.com
william.hurlock@muellerlaw.com

ATTORNEYS FOR RELATOR