**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA,<br><br>*Ex rel.* DIANA MASON<br>                                        Plaintiffs,<br><br>v.<br><br>PRISM AUTISM FOUNDATION d/b/a PRISM BEHAVIORAL SOLUTIONS,<br>                                        Defendants. | Case No.: 3:19-cv-00043-W-BLM<br><br>**ORDER GRANTING MOTION FOR ATTORNEY'S FEES UNDER 31 U.S.C. 3730 [DOC. 22 & 24]** |

Pending before this Court is Relator Diana Mason's Motion for Attorney's Fees under 31 U.S.C. § 3730. Defendant Prism Autism Foundation d/b/a Prism Behavioral Solutions ("Prism") opposes this motion.

The Court decides the matter on the papers submitted and without oral argument. Civ. L. R. 7.1.d.1. For the reasons stated below, the Court **GRANTS** Relator's motion [Doc. 22 & 24] and **AWARDS** $118,023.99 in attorneys' fees and costs.

1

## I. BACKGROUND

On January 8, 2019, Relator Diana Mason filed this *qui tam* action under seal pursuant to 31 U.S.C. § 3730(b)(2), alleging that Prism violated the California and Federal False Claims Acts. (*See Compl.* [Doc 1].) According to the Complaint, "Prism serves families with children or young adults on the Autism spectrum." (*Id.* ¶ 2.) Relator was employed by Prism from March to June 2018 to work "directly with families to develop and implement appropriate behavioral interventions for children and young adults." (*Id.* ¶¶ 8, 9.) Relator alleges that Prism defrauded Medicaid by (1) billing for services not rendered, (2) overbilling for services rendered, and (3) billing for services rendered without the supervision of a qualified provider. (*Id.* ¶ 3.)

Before filing the Complaint, Relator provided the Government with a pre-suit Disclosure Statement and over sixty exhibits. (*P&A* [Doc. 22-2] pg. 4–5; *Compl.* ¶ 18.) After over a three-year investigation, the U.S. Attorney for the Southern District of California determined Prism "knowingly submitted over 2,300 claims for Medicaid reimbursement for services not rendered." (*P&A* pg. 3.) On May 6, 2022, both the state and federal governments intervened for purposes of entering a settlement with Prism. (*Notice of Election to Intervene* [Doc 20] 1:18–27.) Ultimately, the U.S. and California recovered $650,000 in civil penalties and fines from Prism. (*P&A* pg. 3.)

While the settlement agreement was being finalized, Relator and Prism attempted to negotiate reimbursement of Relator's attorney's fees and costs. Because the parties were unable to agree, Relator filed this motion seeking $118,973.99 in fees and costs. Prism opposes.

## II. LEGAL STANDARD

The Supreme Court prefers the lodestar method to calculate attorney's fees for several reasons. First, "lodestar looks to 'the prevailing market rates in the relevant community.'" Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). Second, "the lodestar method

2

produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Id.  Finally, "the lodestar method is readily administrable" and the calculation is objective, which "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." Id.

The lodestar method requires "the district court to calculate the reasonable number of hours" an attorney has "expended and multiply that number by the reasonable hourly rate for" the attorney's services. United States ex rel. Sant v. Biotronik, Inc., 716 F. App'x 590, 591 (9th Cir. 2017) (citations omitted).  The fee applicant bears the "burden of producing evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)).  The "general rule" when calculating this fee "is that the rates of attorneys practicing in the forum district… are used." Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

After a fee applicant has met their burden, the defendant must then submit evidence showing the requested fee is unreasonable. Id. at 1397–98.  This may include "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney." Beauchamp v. Anaheim Union High Sch. Dist., 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir.1990)).  When determining a rate's reasonability, a judge may "rel[y] on their own knowledge of customary rates and their experience concerning reasonable and proper fees." Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

//
//
//

## III. DISCUSSION

### A. Hourly Rates

For purposes of evaluating if Relator's attorney's hourly rate is reasonable, Relator argues the "community" of lawyers should not be attorneys practicing in this district, but rather all "attorneys who specialize in *qui tam* litigation." (*P&A* pg. 10.) Prism responds by pointing out that Relator failed to offer evidence "on local prevailing market rates" and, therefore, argues her fee request should be denied. (*Opp.* [Doc 31] 6:8.)

As an initial matter, the Court agrees with Prism that Relator failed to provide any information regarding the prevailing market rates, whether among attorneys in this district or, as Relator proposes, those specializing in *qui tam* litigation nationwide. Nowhere in the points and authorities does Relator identify the rates of other attorneys practicing in this district or in *qui tam* cases generally. (*See P&A* pg. 10–13.) The only information provided by Relator concerns her attorneys. (*See id.*)

Next, the Court also finds Relator failed to support her contention that the relevant community should be attorneys specializing in *qui tam* litigation. A court may "look outside the forum when the relevant community lacks attorneys with 'the degree of experience, expertise, or specialization required to properly handle the case.'" Wright v. Tehachapi Unified Sch. Dist., 743 F. App'x 125, 126 (9th Cir. 2018) (quoting Gates, 987 F.2d at 1405). Here, Relator has failed to provide any evidence that competent counsel in San Diego was unavailable. See Gates, 987 F.2d at 1405 (approving San Francisco attorney rates because moving party "offered numerous declarations of San Francisco and Sacramento attorneys which directly support their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle this type of complex institutional prison reform litigation were unavailable.")

Notwithstanding Relator's failure to provide evidence regarding the local prevailing market rates, the Court disagrees with Prism's contention that Relator's motion should be denied for two reasons. First, an award of attorneys' fees in this case are not discretionary. Instead, 31 U.S.C. § 3730(d)(1) requires the Court to award Relator "an

amount for reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." Second, the declarations attached to Relator's motion, along with this Court's experience with attorney-fee motions, provide a sufficient basis to evaluate the reasonableness of Relator's attorneys' billing rates. See Soler v. Cnty. of San Diego, 2021 WL 2515236, at *4 (S.D. Cal. June 18, 2021), appeal dismissed sub nom; Soler v. Wilkins, 2021 WL 4979447 (9th Cir. Aug. 19, 2021) (determining reasonability of rates despite unhelpful supporting declarations); Youngevity Int'l, Corp. v. Smith, 2018 WL 2113238, at *4 (S.D. Cal. May 7, 2018) (using discretion to determine a reasonable rate for an attorney who submitted no evidence of skills, experience, or credentials); Moriarty v. Am. Gen. Life Ins. Co., 2022 WL 3907152, at *3 (S.D. Cal. Aug. 19, 2022) ("notwithstanding Plaintiff's light-handed approach to meeting her burden, the Court finds [the]… hourly billing rates reasonable").

The declarations attached to Relator's motion provide evidence regarding her attorneys' background, training, and skill level. Mr. Hurlock, Mr. Furlong, and Mr. Karz were billed at $500, $300, and $350 per hour respectively. (*Hurlock Decl.* [Doc 22-3] ¶ 6.) Mr. Hurlock has practiced for 23 years with a "special focus on *qui tam* cases." (*Id.* ¶5.) Mr. Furlong is an associate "with eight and a half years of experience." (*Id.* ¶6.) Mr. Karz has 34 years of experience as a litigator and has "worked on a variety of complex issues" including mass torts and consumer class actions. (*Karz Decl.* [Doc 22-4] ¶5.)

Courts in this district have "held a range of rates from $450–$750 per hour to be reasonable for a senior partner." G&G Closed Cir. Events, LLC v. Zarazua, 2022 WL 3019859, at *2 (S.D. Cal. July 29, 2022) (citations omitted); Youngevity Int'l Corp., 2018 WL 2113238 at *5; see NuVasive, Inc. v. Alphatec Holdings, Inc., 2020 WL 6876300, at *3 (S.D. Cal. Mar. 20, 2020) (finding a $1,005 billing rate to be reasonable). Mr. Hurlock's hourly rate of $500 falls well within the range of "customary rates" for senior partners in this district.

This district has also "found hourly rates of $550 per hour or higher reasonable for attorneys with partner level experience." Buchannon v. Associated Credit Servs., Inc.,

2021 WL 5360971, at *16 (S.D. Cal. Nov. 17, 2021). Mr. Karz's hourly rate of $350 as an attorney with 34 years of experience is below what this district had deemed reasonable. Mr. Furlong's associate rate of $300 an hour is also reasonable for this district. See Buchannon, 2021 WL 5360971 at *15 (holding $375 was a reasonable rate for an associate); Sengvong v. Probuild Co. LLC, 2021 WL 4504620, at *9 (S.D. Cal. Oct. 1, 2021) (holding $450 was a reasonable rate for an associate); Herring Networks, Inc. v. Maddow, 2021 WL 409724, at *7 (S.D. Cal. Feb. 5, 2021) (awarding attorney's fees for an associate with a rate of $470).

Mr. Hurlock's, Mr. Furlong's, and Mr. Karz's rates are in "line with those prevailing in the community" based on previous awards in this district and this Court's "knowledge of customary rates." Chaudhry, 751 F.3d at 1110 (quoting Camacho., 523 F.3d at 980); Ingram, 647 F.3d at 928. Accordingly, this Court finds each of Relator's attorney's rates reasonable, and will not make any reductions.

### B.     Hours Billed

Relator bears the burden to produce "evidence supporting the hours worked," though they are "not required to record in great detail how each minute of [their] time was expended." Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983). Counsel may meet their burden "by simply listing his hours and 'identify[ing] the general subject matter of his time expenditures.'" Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (citations omitted). A court may reduce any "excessive, redundant, or otherwise unnecessary hours," as well as block-billed hours. Hensley, 461 U.S. at 434; Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).

Here, Relator's attorneys submitted their billings statements to establish the total hours billed. (*See Hurlock Decl.* ¶ 7, Ex. A [Doc. 22-5].)  According to those statements, from 2018 to 2022, Relator's lead attorney, Mr. Hurlock, spent 158.9 hours on the case; his associate, Mr. Furlong, billed 113.2 hours; and local counsel, Mr. Karz, billed 2.5 hours.  (*Hurlock Decl.* Ex. A at pg. 1 of 12.)

In its opposition, Prism argues that the amount of time billed by Relator's attorneys is excessive and raises the following six objections: (1) unreasonable time billed to emails; (2) travel time; (3) clerical or vague time entries; (4) duplicative attorney work; (5) block billing; and (6) time billed to settlement discussions. The Court will address each objection separately below.

### 1. Unreasonable Time Billed to Emails[1]

Prism seeks a "77% reduction" in billable entries for what it contends are an excessive number of emails. (*Opp'n* 14:10–24.) In support of this argument, Prism identifies 18 emails that it contends do not "involve legal research or advice on issues in the case" and thus time spent on the emails was unreasonable. (*Id.* 14:22–23; 15:2–5.) The Court reviewed the 18 entries and finds Prism's argument lacks merit.

At the heart of Prism's argument are inaccurate descriptions of the relevant time entries. For example, Prism cites the time entry on September 14, 2021, and claims the 1.2 hours billed was spent on two emails worth 18 words. (*Opp'n.* 16:4.) However, the entry states the 1.2 hours were billed for "emails regarding settlement issues," as well as reviewing those settlement issues and beginning "to prepare [a] motion" regarding the issues. (*Hurlock Decl.* Ex. A at pg. 8 of 12.) 1.2 hours is a reasonable amount of time to spend on these tasks. With respect to the other 17 emails, Prism's descriptions discount the fact that the entries refer to multiple (not singular) emails and/or describe additional work outside the emails (i.e., settlement issues).

For these reasons, the Court finds the amount of time billed to emails was not unreasonable, particularly given the longevity of this case.

//
//

---

[1] Prism also objects to emails on the basis that they were included in block-billed entries. The Court will evaluate this objection separately.

### 2. Travel Time

Prism objects to "10% of the fees sought by relator's counsel" stemming "from nearly 30-hours two different attorneys jointly spent flying across the country for a single meeting." (*Opp.* 9:6–8.) Prism asks the Court to excise the entries. (*Id.*10:6–7.)

Travel time may be "reasonably compensated at normal hourly rates if such is the custom in the relevant legal market." Comcast of Ill. X, LLC v. Jung Kwak, 2010 WL 3781768, at *6 (D. Nev. Sept. 17, 2010) (citing Davis v. City & Cty. of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993)). But courts have held travel time and expenses may be deducted if out-of-town counsel was unnecessary. Fair Hous. Council of San Diego v. Owner's Ass'n, 523 F. Supp. 2d 1164, 1173–78 (S.D. Cal. 2007, reversed on other grounds in The Fair Hous. Council v. Owner's Ass'n, 381 F. App'x 674 (9th Cir. 2010).

Over the course of this multi-year litigation, Relator and her attorneys took a single trip to San Diego. The purpose of this trip was to meet with the Assistant U.S. Attorney investigating Relator's allegation that Prism was engaged in an extensive scheme to bill Medicaid for over 2,000 fraudulent claims. Mr. Hurlock and Mr. Furlong accompanied Relator to "advance[e] [her] interests" in a "meeting that [could have] materially affect[ed] the case." (*Reply* [Doc 32] 6:13.) Under the circumstances, the Court finds this travel was reasonable, and thus will not reduce fees for travel time.

Prism also seeks to deduct "the $3,992.77 in costs sought" for the travel. (*Opp.* 10:12.) Because the Court finds this travel reasonable, Prism's request to remove the costs associated with this travel is also denied.

### 3. Clerical or Vague Time Entries

Prism contends the following 28 items totaling more than $6,000 in fees are either clerical or the descriptions are too vague and therefore the time should be denied or significantly reduced:

|     | Date       | Atty    | Description                                                                        | Hr. |
|-----|------------|---------|------------------------------------------------------------------------------------|-----|
| #1  | 9/13/2018  | Hurlock | Emails regarding status of matter; review same                                     | .4  |
| #2  | 9/17/2018  | Hurlock | Emails regarding status of matter; review same                                     | .1  |
| #3  | 9/25/2018  | Hurlock | Emails with client regarding status of matter; review same.                        | .2  |
| #4  | 1/10/2019  | Hurlock | Emails regarding filing of complaint; review same                                  | .8  |
| #5  | 1/11/2019  | Hurlock | Emails with client regarding filed complaint; review same                          | .6  |
| #6  | 1/15/2019  | Hurlock | Review court filings; emails regarding same                                        | .9  |
| #7  | 1/17/2019  | Hurlock | Emails regarding court documents needed to file; review same                       | .9  |
| #8  | 1/22/2019  | Hurlock | Emails regarding service status; review same                                       | .6  |
| #9  | 2/6/2019   | Furlong | Prepare documents for service on DOJ                                               | 1.5 |
| #10 | 3/12/2019  | Hurlock | Emails regarding status of matter; review same                                     | .4  |
| #11 | 4/3/2019   | Hurlock | Emails with the Government regarding upcoming meeting; review same                 | .2  |
| #12 | 9/10/2019  | Hurlock | Review additional material; emails regarding same                                  | .4  |
| #13 | 5/18/2020  | Hurlock | Emails and t/cs regarding status of matter; review same                            | .7  |
| #14 | 7/20/2020  | Hurlock | Emails regarding status of matter; review same                                     | .4  |
| #15 | 9/14/2020  | Hurlock | t/c with the Government regarding status of matter; review same                    | .2  |
| #16 | 9/21/2020  | Hurlock | Emails regarding status of matter; review same                                     | .4  |
| #17 | 9/28/2020  | Hurlock | Emails with the counsel regarding status of matter; review same                    | .4  |
| #18 | 10/28/2020 | Hurlock | Review file for material requested by counsel; emails regarding same               | .2  |
| #19 | 3/15/2021  | Hurlock | Emails with the Government regarding meeting to discuss status of the matter; review same | .2  |
| #20 | 4/18/2021  | Hurlock | Emails regarding status of matter; review same                                     | .4  |
| #21 | 7/27/2021  | Hurlock | Emails regarding status of matter; review same                                     | .4  |

| | | | | |
|---|---|---|---|---|
| #22 | 8/17/2021 | Hurlock | Emails with client regarding status of matter; review same | .6 |
| #23 | 3/4/22 | Karz | Phone discussions with Bill Hurlock | .5 |
| #24 | 3/7/22 | Hurlock | Review status of matter; emails regarding same | .4 |
| #25 | 3/8/22 | Hurlock | Review status of matter; emails regarding same | .4 |
| #26 | 3/9/22 | Hurlock | Emails regarding status of matter; review same | .4 |
| #27 | 3/16/22 | Karz | Phone discussions with Bill Hurlock | .5 |
| #28 | 4/26/22 | Karz | Phone discussions with Bill Hurlock | .5[2] |

Tasks that are "clerical in nature," such as "filing, transcript, and document organization time," should not be "billed at hourly rates" because they "should have been subsumed in firm overheard." Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009). A district court has the discretion to reduce a fee award if a time entry is "vague and inadequately explained." Neil v. Comm'r of Soc. Sec., 495 F. App'x 845, 847 (9th Cir. 2012); see Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (holding a district court has discretion to reduce a fee award to a reasonable amount when there is insufficient detail). An entry is considered "vague" when the Court cannot "determine whether the hours reflected therein were reasonably expended." Kailikole v. Palomar Cmty. Coll. Dist., 2020 WL 6203097, at *5 (S.D. Cal. Oct. 22, 2020).

After reviewing all the time entries, the Court finds the majority are reasonable under the circumstances of this case. The "status of the matter" entries and descriptions (#s 1–3, 5, 10, 13–17, 19–22, 24–26) were not unreasonable in a case spanning four years. During that period, it was appropriate for the attorney to send emails every few months to update the client on the status of the case. The descriptions also adequately reflect the nature of the brief correspondence.

---

[2] The information in the table is taken from select entries from Prism's Exhibit B [Doc. 31-3] at 2-15.

Additionally, Prism again fails to place the entries in context. For example, entry #1 billed 0.4 hours for "emails regarding status of matter; review same." Based on other billing entries during the period, it is clear the email came towards the end of an active period at the start of Mr. Hurlock's investigation into the case. (*See Hurlock Decl.* Ex. A at pg. 2 of 12.) Entries #13 and #14 are the only emails sent over a 5-month period. Two emails (billed at barely over an hour together during this period) is reasonable to keep the client appraised of the status of the case. Further, occasional short phone calls between attorneys over the life of a case like this is reasonable (#s 23, 27–28).

With respect to entries #4, 6–9, the docket indicates the only document filed at the time was the Complaint. As these entries only briefly mention filings and service, they are too vague to determine whether the tasks were "clerical in nature," and thus the Court reduces entries #4, 6–9 by 50%. Finally, entries # 11–12, 18 are not too vague, and the Court finds those entries to be reasonable over the life of this case.

Accordingly, this Court will exclude 2.2 hours equaling $950 on the basis that the billing entries are too vague and appear to be clerical in nature.

**4.    Duplicative Attorney Work**

Prism "identifi[ed] nearly 20 items for which relator seeks more than $12,000 in fees," which Prism argues is "duplicate work being done by multiple, capable attorneys." (*Opp.* 13:8–10.) Prism states because "relator's counsel does not explain why it was necessary for both attorneys" to perform the same tasks, the duplicative fees should be removed. (*Id.* 13:25–26; 14:8–9.)

"'[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" McGrath v. County of Nevada, 67 F.3d 248, 255 (9th Cir. 1995) (citations omitted). Additionally, "the pyramid law firm model of having associates complete work that is then reviewed by partners" is not "a reason to reduce hours." Herring Networks, Inc. v. Maddow, 2021 WL 409724, at *9 (S.D. Cal. Feb. 5, 2021) (referencing Moreno v. City of Sacramento, 534 F.3d 1106, 1114-15 (9th Cir.

2008)). But some courts have held "intra-office conferences" may be "unnecessary and duplicative." Welch, 480 F.3d at 949; see Noyes v. Grossmont Union High Sch. Dist., 331 F. Supp. 2d 1233, 1250 (S.D. Cal. 2004) (imposing a 5% reduction in fees for internal communications between co-counsel). Courts should generally defer to the "winning lawyer's professional judgment as to how much time he was required to spend" on a contingency-fee case. Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1136 (9th Cir. 2012) (citations omitted).

After reviewing the challenged billing entries, the Court finds the number of hours billed is reasonable. Almost all the entries marked as "duplicative" are because both Mr. Hurlock, the senior partner, and Mr. Furlong, the associate, worked on the same document, such as the Complaint or Disclosure Statement. It is reasonable to have a younger associate draft and prepare a document that the senior attorney then finalizes. Thus, this Court will not reduce any time entries the Prism contends are "duplicative."

### 5. Block Billing

Prism argues "81 time-entries, accounting for approximately half of relator's counsel's time" were "block-billed for multiple tasks or whole days of work on a single task." (*Opp.* 17:16–18.) Prism "proposes a 50% reduction to block-billed time entries." (*Id.* 18:11–12.) Relator responds that the "time entries are not block-billed, but rather reflect time expended on specific tasks" and not "the total daily time spent working on the case." (*Reply* 9:14–15.)

Block billing "makes it more difficult to determine how much time was spent on particular activities," and thus a district court has the authority "to reduce hours that are billed in block format" when this leads to inadequate records. Welch, 480 F.3d at 948. Block billing does not only mean billing "the total daily time spent working on the case." Id. at 945. It also occurs when "'one amount of time is shown for working on more than one discrete task.'" Welch v. Metro. Life Ins. Co., 2004 WL 7334912, at *3 (C.D. Cal.

Sept. 20, 2004), vacated in part, 480 F.3d 942 (9th Cir. 2007) (citing Arbitration Advisory 03-01, Detecting Attorney Bill Padding, available at http://calbar.ca.gov).

      The danger in block billing comes when a court cannot properly discern if the hours billed were reasonable for the task described. Though a court may "reduce attorney's fees documented where block-billing occurs," the "reasonableness determination remains within the discretion of the Court." Cammarata v. Kelly Cap., LLC, 2020 WL 4784745, at *4 (S.D. Cal. Aug. 18, 2020). Further, "block-billing is permissible where it 'involves the grouping of highly related tasks that rarely cover more than a few hours.'" Thermolife Int'l, LLC v. Myogenix Corp., 2018 WL 325025, at *7 (S.D. Cal. Jan. 8, 2018), aff'd sub nom. Thermolife Int'l LLC v. GNC Corp., 922 F.3d 1347 (Fed. Cir. 2019) (quoting Sunstone Behavioral Health, Inc. v. Alameda County Medical Center, 646 F.Supp.2d 1206, 1217 (E.D.Cal. Aug. 20, 2009)). A court does not need to "reduce hours where entries 'are detailed enough for the Court to assess the reasonableness of the hours.'" Id. (quoting Campbell v. Nat'l Passenger R.R. Corp., 718 F.Supp. 2d 1093, 1103 (N.D. Cal. 2010)).

      Many of Relator's attorneys' block-billed entries involved work on the Complaint. In evaluating these entries, it is important that the Complaint reflects a significant amount of factual investigation into areas such as Autism Spectrum Disorder (ASD), and the possible treatments for children with ASD, as well as Prism's alleged fraudulent conduct. (*Compl.* ¶¶ 21–31, 61–89.) In addition, the Complaint involves substantial legal research into Medicaid, the False Claims Acts, and the California Insurance Fraud Prevention Act. (*Id.* ¶¶ 32–60.) Given the detail and research included in the Complaint, the Court finds the time billed to Complaint-related block entries was reasonable.

      With regard to other entries, though Relator's attorneys' time entries contain multiple tasks, this does not lead to inadequate records. Most of the entries Prism objects to as "block billed" involve a specific task, such as reviewing and revising the Disclosure Statement, and "emails and t/cs regarding same." The Court is satisfied the amount of time spent on these tasks was reasonable. In the context of a case lasting four years and

13

including complicated factual and legal issues, all entries and descriptions appear reasonable. Thus, the Court will not reduce the hours billed for any block-billed entries.

### 6. Settlement Hours

Prism argues "the Court should excise hours unreasonably expended on settlement" by Relator's counsel because Relator has "little to no authority" over the settlement and because "attempts to settle fees [went] beyond relator's own self-imposed deadline for settlement." (*Opp.* 19:20–22.) Relator, on the other hand, asserts if "Defendant's counsel had not played games in the settlement discussions the majority of the fees and costs *would not have ever been incurred*." (*Reply* 10:9, *emphasis in original*.) Further, Relator asserts it is because of Prism's "antics" that "the initial settlement was reopened once the Government discovered" Prism "hid assets in connection with false ability to pay argument." (*Id.*)

Once the Government intervenes in a FCA case, though the Government has the "primary responsibility for prosecuting the action," a relator still maintains "the right to continue as a party to the action." 31 U.S.C. § 3730(c). By considering the extent to which the relator "substantially contributed to the prosecution of the action" in determining the share of the recovery the relator receives, the statute encourages continued participation by a relator. Id. at § 3730(d)(1). Post-government intervention, the FCA serves "the additional purpose of giving a relator the incentive to act as a check that the government does not neglect evidence, cause undue delay, or drop the false claims case without legitimate reasons." US v. Northrop Corp., 59 F.3d 953, 963–64 n.8 (9th Cir. 1995). In other words, regardless of whether Relator had ongoing authority, the fact remains she was essential to assisting with the Government's understanding of Prism's conduct and thus remained important to the case leading up to settlement.

Indeed, Relator's contribution to the settlement is evidenced by the 20% share paid to her. A relator's share in a settlement reflects "the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). In a

*qui tam* action where the government intervenes, a relator may be awarded between 15% and 25% based on their contribution in bringing about the settlement. Here, the 20% award demonstrates the level of contribution Relator and her counsel brought to the case.

While Prism objects to the level of relator's counsels' participation post-intervention, there is no evidence the Government similarly objected. Thus, this Court will not reduce post-intervention hours.

## IV. CONCLUSION

The Court **GRANTS** the Relator's motion for attorney's fees [Doc. 22 & 24] and **ORDERS** Defendant Prism to pay Relator's attorneys' fees and costs in the amount of $118,023.99.

Dated: October 6, 2022

Hon. Thomas J. Whelan
United States District Judge